UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


TABITHA M. GANN

CIVIL ACTION

VERSUS

NUMBER 14-189-BAJ-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 3, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TABITHA M. GANN

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 14-189-BAJ-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Tabitha M. Gann brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.[1]

Based on the standard of judicial review under § 405(g), and a careful review of the entire administrative record as a whole, the Commissioner's decision should be reversed and this case remanded under the second clause of sentence six of § 405(g).

**Background and Claims of Error**

Plaintiff was 44 years old at the time of the administrative law judge's ("ALJ") decision.[2] In June 2011 the plaintiff filed an application for disability insurance benefits alleging disability

---

[1] Plaintiff exhausted her administrative remedies before filing this action for judicial review.

[2] Plaintiff's age placed her in the category of a "younger person." 20 C.F.R. § 404.1563(c)

beginning in June 2010.  Plaintiff alleged she was no longer able to engage in substantial gainful activity because of multiple conditions - systematic lupus, Sjogrens syndrome, cervical stenosis, bulging disc in lumbar spine, migraines, poor circulation, and peripheral neuropathy.  Plaintiff completed high school and had one year of college.  Plaintiff had worked in the past in the construction industry as an estimator, project developer, and sales person.  AR pp. 145, 150, 157, 158, 162, 164-70, 180.  Plaintiff's application for disability benefits was denied at the initial administrative stages.  Plaintiff requested an ALJ hearing, and a hearing was held.  AR pp. 29-75.  On December 21, 2012 the ALJ denied the plaintiff's application for disability benefits at the fifth step.

The ALJ made the following findings in reaching this decision.[3] He determined the plaintiff had not engaged in substantial gainful activity since June 29, 2010.  At step two he found the plaintiff had the following severe impairments - cervical

---

[3] The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits.  20 C.F.R. § 404.1520.  In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

spondylosis at the C5 through C7 disc levels, lupus, depressive disorder and anxiety disorder. At step three the ALJ considered whether the plaintiff had an impairment or combination of impairments that met the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ analyzed whether the cervical condition and mental impairments satisfied the criteria of Listing 1.04 (Disorders of the spine), 12.04 (Affective Disorders) or 12.06 (Anxiety Related Disorders).[4]

Finding the plaintiff was not disabled under a listing at step three, the ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite her severe impairments, the plaintiff was able to do any of her past relevant work or other work in the national economy.[5] The ALJ found the plaintiff had an RFC to perform less than a full range of light work, and was limited to no more than occasional climbing of ramps/stairs/ladders/scaffolds and further restricted to simple, routine, and repetitive tasks.[6] AR p. 18. Given this RFC, and

---

[4] Although the ALJ found lupus was one of the plaintiff's severe impairments, the ALJ did not address the listing applicable to this impairment. AR pp. 16-18; Listing 14.02 (Systemic lupus erythematosus).

[5] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 404.1545.

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10
(continued...)

3

based on the testimony of the vocational expert, the ALJ concluded at the fourth step that the plaintiff would be not be able to perform any of her past relevant work. AR pp. 21-22, 70-71. Therefore, the ALJ reached his disability decision at the fifth step. Based on the plaintiff's RFC, age, education and work experience, the expert testified there were several occupations existing in significant numbers in the national economy the plaintiff would be able to do - mail clerk, fast food worker and cashier. AR pp. 22-23, 70-73. The ALJ found the plaintiff is not disabled, because although she cannot do any of her past work she is capable of performing other work.

Plaintiff requested review by the Appeals Council. Plaintiff was represented by counsel in her request for review. In conjunction with the request for review counsel submitted a brief and additional evidence. The Appeals Council considered the brief and the evidence, which consisted of treatment notes from Appleton Psychotherapy and Counseling Services, and made this evidence part of the administrative record. AR pp. 1-6, 206-10, 442-503.

Other evidence submitted to the Appeals Council consisted of an MRI of the cervical spine dated October 7, 2013, and an eight

---

[6](...continued)
pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b).

page medical source statement from Dr. Jed Morris dated April 23, 2013. The Appeals Council reviewed this evidence but did not consider it and did not make it a part of the administrative record. With regard to this evidence, the Appeals Council stated that the ALJ decided the case through December 21, 2012, and this new MRI and information from Dr. Morris was about a later time. Therefore, according to the Appeals Council, it did not affect the decision about whether the plaintiff was disabled beginning on or before December 21, 2012. Plaintiff was informed that if she wanted the agency to consider whether she was disabled after December 21, 2012 she could apply again, and the new information dated after December 21 would be available in the electronic file for her to use in making a new claim. AR p. 2.

The Appeals Council issued its decision denying the plaintiff's request for review on March 20, 2014. Plaintiff then filed this action for judicial review of the Commissioner's final decision, and submitted for judicial review the report of Dr. Morris that the Appeals Council decided was not material to its review of the ALJ's decision.[7]

In her appeal memorandum the plaintiff argued that numerous errors by the ALJ and the Appeals Council require reversal and

---

[7] Plaintiff attached this evidence to the initial memorandum in support of her appeal. Record document number 7-1. Plaintiff also attached a Social Security Memorandum dated August 9, 2010. Record document number 7-2. Plaintiff did not submit the 2013 MRI.

remand for further development of the record and reconsideration of her disability claim. The claims of error raised by the plaintiff are these: (1) at the ALJ hearing where the plaintiff was unrepresented, the ALJ failed in his duty to fully and fairly develop the record;[8] (2) the ALJ's reasons for not crediting the opinion of clinical psychologist Kirsten W.Schwehm, Ph.D. are not supported by substantial evidence;[9] (3) the ALJ failed to consider and credit Dr. Morris's certification of a permanent impairment in the plaintiff's ability to walk;[10] (4) the ALJ finding the plaintiff not fully credible with regard to her statements on the intensity and limiting effects of her symptoms is not supported by substantial evidence; and, (5) the Appeals Council committed reversible error by not considering Dr. Morris' April 23, 2013 medical source statement, which it found was not relevant.

---

[8] Plaintiff argued the ALJ failed to develop the record by: (1) not obtaining updated medical records from her treating physicians and therapist; (2) not questioning her about chemotherapy she underwent in 2007 and 2011; (3) not considering evidence or questioning the plaintiff about her other autoimmune disease, Sjorgren's syndrome; and (4) not directing any questions to the physician/friend who drove the plaintiff to the hearing.

[9] In her evaluation/report Schwehm stated the plaintiff's measurable cognitive deficits and mood disturbance would present a challenge to attempts to return to work. Schwehm did not think the plaintiff was able to return to full-time work, but with mood management and intensive compensatory strategies would possibly be able to return to part-time work. AR pp. 426-31.

[10] AR p. 288. This certification was done so the plaintiff could obtain a disability parking permit. Plaintiff argued that this evidence from a treating physician shows that she cannot do the standing and walking required to perform light work.

6

Based on the applicable law below, and a careful review of the entire administrative record as a whole, the plaintiff's claim that the Appeals Council improperly rejected and failed to consider new and material evidence has merit.

**Applicable Law**

It is well established that in cases brought under 42 U.S.C. §405(g), evidence external to the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1,2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Haywood v. Sullivan*, 888 F.3d 1463, 1471 (5th Cir. 1989). It is equally well established that when such evidence is submitted by a party on judicial review, the court considers the evidence only to determine whether remand is appropriate under the second clause of sentence six of § 405(g). *Id*. The applicable portion of sentence six of § 405(g) provides, in pertinent part, that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." To justify such a remand under this provision the evidence must be (1) new, (2)material, and (3) good cause must be shown for the failure to incorporate the evidence into the record

7

in the original proceeding.  *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Evidence must first be new, and not merely cumulative of what is already in the record.  *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).  To demonstrate good cause some explanation must given as to why the evidence was not submitted earlier in the proceeding.  *Id.* Implicit in the materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later acquired disability, or the subsequent deterioration of a previously nondisabling condition.  *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).  For new evidence to be material there also must exist the reasonable possibility that it would have changed the outcome of the Commissioner's determination.  *Latham*, 36 F.3d at 483.

## Analysis

The Dr. Morris' April 23, 2013 eight-page report constitutes new evidence under sentence six.  As recognized by the Appeals Council, the report originated after the ALJ's decision and so was not before the ALJ for consideration when he issued his findings on December 21, 2012.[11]  The findings and evaluation included in the

---

[11] The Appeals Council decision stated, "This new information (continued...)

8

report are not merely cumulative of information already contained in the administrative record. While the record does contain treatment records and tests ordered by Dr. Morris dating from 2007 through 2012, the record does not contain any comprehensive reports from him or any other physician which summarize the plaintiff's autoimmune impairments and describes their aggregate affect on her ability to perform the physical and other demands of work.[12]

---

[11](...continued)
is about a later time." AR p. 2. The Commissioner does not appear to dispute that the evidence is new. Record document number 9, Defendant's Opposition Memorandum, p. 10.

[12] Under the regulations, determination of a claimant's RFC and ability to do past work and other work in the national economy is based on an evaluation of the ability to perform the physical, mental, sensory and other demands of work. The strength demands of work are classified as "exertional" and the limitations/restrictions imposed by a claimant's impairments on her ability to meet the strength demands of work must be evaluated to determine the RFC and ability to do any past work or other work. The exertional/strength demands of jobs are defined in terms of sitting, standing, walking, lifting, carrying, pushing, pushing, and pulling. The non-strength demands of work are considered nonexertional and likewise must be evaluated. The regulations define the nonexertional demands of work as the ability to concentrate, be attentive, understand instructions, see and hear, tolerate dust and fumes, and perform manipulative/postural functions such as reaching, handling, crawling, crouching. See, 20 C.F.R. §§ 404.1545; 404.1567; 404.1569a.
    Based on these regulations the report of consultative examiner Dr. Jose Simon was very limited. He only reported that the plaintiff "should be able" to push, pull and reach, "will be able" to crouch, squat and stoop, and had a normal range of motion in all major joints, cervical and lumbar spine. AR p. 361-62. The disability determination explanation which included an RFC assessment was not done by a non-examining state agency medical consultant, but a single decision maker ("SDM"). The finding(s) of a single decision maker are not medical source opinions. AR pp. 82-83. *See*, *James v. Astrue*, 2013 WL 443846 (W.D.La. Jan. 17,
(continued...)

The record also establishes good cause for the evidence not being a part of the record and considered when the plaintiff's claim was before the Commissioner. No neglect or fault on the part of the plaintiff caused the evidence to be excluded from the record. When her request for review was pending before the Appeals Council, the plaintiff attempted to have the evidence included in the record and have it considered in support of her claim. The Appeals Council received it, but then declined to consider it or make it a part of the record based on a finding that the report was about a later time and not relevant. This is why the medical source statement from Dr. Morris is not part of the record of the proceedings before the agency. These circumstances support finding the good cause necessary for a remand under sentence six.

Finally, the Commissioner's argued that Dr. Morris report did not relate to the time period for which benefits were denied and simply showed the subsequent deterioration of the plaintiff's previously nondisabling condition. This argument is not supported by the record. Dr. Morris' treatment records and his 2013 report establish that he regularly treated the plaintiff since 2007, with visits every one to three months. The report is dated just four months after the ALJ's decision. The report is based on test

---

[12](...continued)
2013), report and recommendation adopted, 2013 WL 443819 (W.D.La. Feb. 5, 2013).

results, objective findings and reported symptoms that are included in the treatment records from 2007 through 2012.[13] Therefore, the record demonstrates that the report is based on the plaintiff's impairments and their limiting effects during the time period before the ALJ's December 2012 decision. The report is not evidence of a deterioration in the plaintiff's condition after the ALJ rendered his decision.

Considering all the evidence of record and the law/regulations applicable to considering evidence from treating physicians, there exists a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's determination. As previously noted, the record before the ALJ and Appeals Council contained only a physical RFC by a single decision maker who is not a medical source, and a limited assessment by Dr. Simon who examined the plaintiff one time. Plaintiff had a long and frequent treatment relationship with Dr. Morris, and his report included a comprehensive RFC evaluation of the limitations/restrictions caused by the plaintiff's impairments. These circumstances, and the fact that the findings and opinions of a treating doctor are generally given more weight and significance,[14] establish a reasonable possibility that consideration of this report would have changed

---

[13] See, for example, AR pp. 212-31, 255, 289, 299, 319, 324, 340-41, 438.

[14] See, Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000); 20 C.F.R. § 404.1527.

the Commissioner's decision.

Insofar as the plaintiff argued that other errors also require reversal of the Commissioner's decision, the plaintiff may pursue any arguments related to these claims of error in the administrative proceedings on remand.

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that under second clause of sentence six of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security Carolyn W. Colvin denying the application for disability benefits filed by plaintiff Tabitha M. Gann be reversed and this case remanded to the Commissioner for consideration of new and material evidence and reevaluation of the plaintiff's claim for benefits.

Baton Rouge, Louisiana, August 3, 2015.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE